# United States District Court

**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA *ex* | § | |
| *rel.* MICHAEL JAMISON, GREGORY | § | |
| DEAN TINNELL, EARNEST | § | |
| HUNTER, & DOROTHY WILLIAMS | § | |
| | § | CIVIL ACTION NO. 3:16-CV-3248-S |
| v. | § | |
| | § | |
| CAREER OPPORTUNITIES, INC. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

This Order addresses Defendant Career Opportunities, Inc.'s Motion to Dismiss for Failure to State a Claim [ECF No. 64]. For the reasons stated below, the Court grants in part and denies in part the Motion.

## I.      BACKGROUND

Relators Michael Jamison, Gregory Dean Tinnell, Earnest Hunter, and Dorothy Williams (collectively, "Relators") brought the instant qui tam action for alleged violations of the False Claims Act ("FCA") by Defendant Career Opportunities, Inc. ("Defendant" or "COI"). Pursuant to Special Order 3-318, this case was transferred from the docket of Judge Sidney A. Fitzwater to the docket of this Court on March 8, 2018. As the present action is the subject of a prior opinion of this Court, *see United States ex rel. Jamison v. Career Opportunities, Inc.*, Civ. A. No. 3:16-CV-3248-S, 2019 WL 460229 (N.D. Tex. Feb. 6, 2019), the Court will discuss the background facts only to the extent necessary for this Memorandum Opinion and Order.

### A.      *Defendant's Contract with DOL*

Job Corps is a program created by the Workforce Investment Act of 1998. Third Am. Compl. ¶ 13. Its purpose is to provide educational and vocational skills, training, and support services through a nationwide network of campuses, known as Job Corps Centers ("Centers"). *Id.*

Defendant is the prime contractor for a $95 million contract from the United States Department of Labor ("DOL") to manage and operate one such Center—the North Texas Job Corps Center in McKinney, Texas ("NTJCC"). *Id.* ¶ 15. Although Defendant entered into a subcontract agreement with Del-Jen, Incorporated ("DJI") to operate the center, "[i]t was agreed that [Defendant] would submit requests for payment to the DOL, and certify to the validity and truthfulness thereof in doing so, for the joint benefit of both [Defendant] and DJI, certifying to full compliance with the contract and with applicable DOL regulations." *Id.* ¶¶ 16-17. Moreover, "the overall management and direction [of NJTCC], as well as the actual reporting and contractual relationship with the DOL, was [handled] by COI." *Id.* ¶ 18.

Center operators, like Defendant, receive payment from the DOL pursuant to negotiated contracts between the contractor and the federal government, and in accordance with the rules and reimbursement processes outlined in the DOL Education and Training Administration Procedures and Requirements Handbook. *Id.* ¶ 19. The referenced contracts are cost-reimbursement contracts, which require that center operators submit certain information to the DOL each month through a proprietary software known as the Job Corps Financial Management System ("FMS") to obtain payment for costs expended together with earned incentive fees. *Id.* Like other center operators, Defendant used the FMS to "fulfill most of their financial reporting and operational responsibilities." *Id.* ¶ 22.

The FMS "is a web-based financial reporting IT application administered by the Job Corps Data Center." *Id.* Defendant used the FMS to input data into a "Form 2110 cost report" and Form 2181 budget. *Id.* Each Form 2110 cost report is used to obtain payment from the DOL for services rendered to Job Corps enrollees. *Id.* ¶ 24. As part of the Form 2110, Defendant computed its "base fee," which is a monthly proration of the annual contract amount, and "incentive fees" which

are paid for attainment of metrics evidenced by the reports for center performance. *Id.* Each report must be signed by an authorized contractor representative. *Id.* ¶ 25.

The base fee and incentive fee are generated—and ultimately inputted into the Form 2110—based on information placed in a proprietary software called the "Center Information System" ("CIS"). *Id.* ¶¶ 24-25; *see also* Resp. to Mot. to Dismiss ("Resp.") 6. The CIS is also used to generate a number of reports to determine the achievement of performance metrics used to calculate both base payments and incentive payments. *Id.* The CIS is comprised of four reports: (1) Outreach and Admissions Report Card; (2) Career Transition Services Report Card; (3) Career Technical Training Report Card; and (4) Center Quality Assessment composed of three components: (a) Onboard Strength rating, (b) Student Satisfaction Survey rating, and (c) a Quality Rating. *Id.* Those reports affect the measure of base fees and incentive fees and include a certification that the information contained therein is true and correct. *Id.* ¶ 25-26. Each Center's performance is compared with the performance of all Centers nationwide. *Id.* ¶ 27. Performance is measured by metrics such as total number of students enrolled, students' achievement of academic and vocational credentials, and initial and ongoing job placements. *Id.* Operators can receive performance-based fees, bonuses, and contract extensions if their Center has a favorable rating compared to other Centers. *Id.* ¶ 28.

## B.    *The Alleged Scheme*

Around October 1, 2010, Kite allegedly held a meeting with Martin, Kathy Adams, Eddie Williams, and Tommy Johnson[1] at a restaurant in McKinney. *Id.* ¶ 36. Relators allege that, at the meeting, Kite discussed how to submit fraudulent reports to the DOL for payment. *Id.*

---

[1] Relators do not state what role Adams, Williams, and Johnson played at the NTJCC.

According to the Third Amended Complaint, Defendant implemented this scheme and submitted claims, invoices, vouchers, and reports that contained fraudulent misrepresentations and omissions using the aforementioned software systems to defraud the United States. *See id.* ¶ 1. For example, Relators allege that Defendant artificially inflated the number of students enrolled by, among other things, omitting "disqualifying special medical issue[s] or legal issues" from the enrollment information, or intentionally limiting background checks. *Id.* ¶¶ 47, 53-54. Furthermore, Defendant allegedly artificially inflated its students' course completion metric, failed to report disqualifying class absences, "forced" its teachers to assist the students in GED testing, required the teachers to complete courses for the students, and recategorized dismissals for disciplinary reasons as "medical separations," to "receive[] additional monies and bonuses from the DOL." *Id.* ¶¶ 57, 59, 63, 65, 66-68, 69-70.

Relators claim that governing statutes required Defendant to report performance-related information on the operations of the NTJCC. *Id.* ¶ 33. That information was used to compare the performance of the NTJCC with the performance of other Centers. *Id.* If a Center fails to meet the expected levels of performance, the Center is subject to a variety of actions by the DOL, including, but not limited to, changing the management staff of the Center, replacing the operator of the Center, and/or relocating or closing the Center. *Id.* ¶ 34. Failure to meet levels of performance also means the Center will not receive any bonus monies and will not receive any contract extensions. *Id.* As of 2011, the NTJCC received $37,880 per enrolled student and $76,574 for each student that graduated with a diploma, GED, or trade certificate and was placed in a job. *Id.* ¶ 31.

Moreover, Relators state that they personally observed the alleged fraud. Relator Williams allegedly had the responsibility at the NTJCC to input data into the CIS system, which is then

translated into system-generated reports by which center rankings and performance were evaluated, and which formed the basis for Defendant's base pay and incentive pay. *Id.* ¶ 39. Relators contend that "[f]or many of the fraudulent reports and certifications submitted by [Defendant] to the DOL, Relator Williams actually prepared and submitted the same on behalf of [Defendant]." *Id.* ¶ 25. Specifically, Relators allege that "Relator Williams personally, at the direction and behest of Lana Kite, Maria Martin and other center personnel, inputted data into the CIS that was false and which was known to be false, for the specific intent that [the] DOL would rely on the inputs to compute payment of [Defendant's] base pay and incentive pay for operations at NTJCC. These reports were submitted by Relator Williams every month from April 2012 through April 2014." *Id.* ¶ 39. Similarly, Relator Tinnel, a former Career Advisor and Career Advisor Director between 2008 and 2012, purportedly observed NTJCC's Career Advisors falsify student placement. *See id.* ¶¶ 4, 73.

Relator Jamison—the Safety, Security and Transportation Manager at NTJCC—was allegedly instructed to advise students that the voluntary surrender of "narcotics and weapons" would not result in expulsion, discipline, or police involvement, and was told by the Deputy Center Director Maria Martin to "never . . . call the . . . Police Department" without "approval from her." *Id.* ¶¶ 81-83. The Third Amended Complaint further states that, although per the governing statute, Defendant was required to report performance-related information on the operations of the NTJCC, "no reports of student criminal violations were submitted to the DOL" between August 2012 and July 2014. *Id.* ¶¶ 3, 83. In fact, Jamison "was directly threatened with termination if he continued reporting violations to the police, or [engaged in conduct that] in any fashion . . . could lead to disclosure to the DOL." *Id.* ¶ 89.

## C. *Procedural History*

On November 19, 2013, Relators filed their original complaint in *United States ex rel. Jamison v. Del-Jen, Inc.*[2] They named DJI and COI as defendants. On November 20, 2014, the United States filed a Notice of Election to Decline Intervention. On September 16, 2016, Judge Sam A. Lindsay dismissed COI from the lawsuit because Relators failed to timely serve COI.[3] *United States ex rel. Jamison v. Career Opportunities, Inc.*, Civ. A. No. 3:13-CV-4616-L, 2016 WL 8730531 (N.D. Tex. Sept. 16, 2016). On November 18, 2016, Relators filed the instant action against COI. On May 12, 2017, the United States filed a Notice of Election to Decline Intervention. *See* ECF No. 7. On August 16, 2017, COI filed a motion to dismiss. Relators filed the Amended Complaint on September 12, 2017. COI filed a second motion to dismiss on October 3, 2017. Without ruling on that motion, the Court granted Relators leave to amend. Relators filed the Second Amended Complaint on August 14, 2018. COI filed its third Motion to Dismiss on August 28, 2018. The Court granted that Motion, and dismissed Relators' causes of action without prejudice. *See* ECF No. 49. Relators filed a Third Amended Complaint on May 23, 2019. COI filed the pending Motion to Dismiss on June 6, 2019.

## II. LEGAL STANDARDS

### A. *Rule 12(b)(6)*

To defeat a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738,

---

[2] Civ. A. No. 3:13-CV-4616-L (N.D. Tex. filed Nov. 19, 2013).

[3] Judge Lindsay ultimately dismissed the lawsuit against DJI as well, and the Fifth Circuit affirmed his decision. *United States ex rel. Jamison v. Del-Jen, Inc.*, Civ. A. No. 3:13-CV-4616-L, 2017 WL 958604 (N.D. Tex. Mar. 13, 2017), *aff'd*, 747 F. App'x 216 (5th Cir. 2018). Judge Lindsay based his dismissal in large part on the fact that Relators provided only general and conclusory allegations. *Id.* at *1, *4.

742 (5th Cir. 2008). To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility does not require probability, but a plaintiff must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.* The court must accept well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). However, the court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted).

The ultimate question is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff. *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002). At the motion to dismiss stage, the court does not evaluate the plaintiff's likelihood of success. It only determines whether the plaintiff has stated a claim upon which relief can be granted. *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977).

### B.     *Rule 9(b)*

When a complaint alleges fraud, the plaintiff must plead the elements of its claims with the heightened particularity required by Rule 9(b). *See, e.g., Coates v. Heartland Wireless Commc'ns, Inc.*, 26 F. Supp. 2d 910, 914 (N.D. Tex. 1998). Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."

FED. R. CIV. P. 9(b). "At a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) (quoting *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992)). Put simply, Rule 9(b) requires the "who, what, when, where, and how" of the fraud. *U.S. ex rel. Williams v. Bell Helicopter Textron Inc.*, 417 F.3d 450, 453 (5th Cir. 2005) (quoting *U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)).

Claims brought under the FCA must satisfy the strictures of Rule 9(b). *United States ex rel. Spicer v. Westbrook*, 751 F.3d 354, 365 (5th Cir. 2014). However, "the 'time, place, contents, and identity' standard is not a straitjacket for Rule 9(b)." *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009). If a relator "cannot allege the details of an actually submitted false claim," the relator must allege "particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Id.*

## III.   ANALYSIS

Defendant moves to dismiss all three counts of the Second Amended Complaint, arguing that Relators have failed to satisfy the pleading standards of Rules 12(b)(6) and 9(b).

### A.   *Presentment Claim*

A claim under 31 U.S.C. § 3729(a)(1)(A) arises when a person "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." "[T]he provision's *sine qua non* is the presentment of a false claim." *Grubbs*, 565 F.3d at 188. The FCA "attaches liability, not to the underlying fraudulent activity . . . but to the claim for payment." *United States ex rel. Longhi v. United States*, 575 F.3d 458, 467 (5th Cir. 2009) (quoting *Harrison v.*

*Westinghouse Savannah River Co.*, 176 F.3d 776, 785 (4th Cir. 1999)). "Because the linchpin of

an FCA claim is a false claim, 'the time, place and contents of the false representations, as well as

the identity of the person making the misrepresentation and what that person obtained thereby must

be stated in a complaint alleging violation of the FCA in order to satisfy Rule 9(b).'" *United States*

*ex rel. Rafizadeh v. Continental Common, Inc.*, 553 F.3d 869, 873 (5th Cir. 2008) (quoting *United*

*States ex rel. Doe v. Dow Chem. Co.*, 343 F.3d 325, 329 (5th Cir. 2003)).

Here, the Court finds that Relators' Third Amended Complaint offers sufficient "details of

an actually submitted false claim" to satisfy the Rule 9(b) pleading standard for this Count.

*Grubbs*, 565 F.3d at 190. In other words, Relators have stated their claim with the particularity

required as to the "who, what, when, where, and how of the alleged fraud." *United States ex rel.*

*McLain v. Fluor Enters.*, Civ. A. Nos. 06-11229, 09-4191, 2013 WL 4721367, at *2 (E.D. La.

Sept. 3, 2013) (citing *United States ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 266 (5th

Cir. 2010)). Specifically, Relators allege as follows:

- Relator Williams (who), acting under instructions from Defendant, inputted data that was false and known to be false into the CIS. Third Am. Compl. ¶ 40.

- The allegedly false data inputted into the CIS was used to complete lines 28 and 29 of the Form 2110's (what), which were submitted to the DOL for the purposes of obtaining reimbursement. *Id.* ¶¶ 23-26; Resp. 6.

- The false reporting took place every month from April 2012 through April 2014 (when) at the NTJCC in McKinney, Texas (where). *Id.* ¶¶ 15, 39.

- Relator Williams input false information related to, among other things, the number and qualifications of students to increase Defendant's base and incentive pay (how). *Id.* ¶ 47.

*See United States ex rel. Harman v. Trinity Indus., Inc.*, Case No. 2:12-CV-00089-JRG, 2014 WL

47258, at *8 (E.D. Tex. Jan. 6, 2014) (holding the complaint "outline[d] a very particular set of

factual circumstances meeting each required element of a claim for relief under the [FCA],"

including the who, what, where, when, and how of the alleged fraud). Viewing the Third Amended

Complaint in the light most favorable to Relators, the Court finds Relators have stated a claim for presentment under Rule 12(b)(6) and Rule 9(b), and therefore denies Defendant's Motion as to this Count.[4]

### B. *False Records Claim*

Like a presentment claim under § 3729(a)(1)(A), a false records claim under § 3729(a)(1)(B) requires a relator to "show that the claim presented for payment . . . was false." *United States ex rel. Rigsby v. State Farm Fire & Cas. Co.*, 794 F.3d 457, 476-77 (5th Cir. 2015), *aff'd*, 137 S. Ct. 436 (2016); *see also Longhi*, 535 F.3d at 467 (applying the same elements to a present claim and a false records claim). However, liability under 31 U.S.C. § 3729(a)(1)(B) attaches when a defendant "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." In other words, "the recording of a false record, when it is made with the requisite intent, is enough to satisfy the [FCA]" *Grubbs*, 565 F.3d at 193, so long as the false record is material to the payment—i.e., the record would affect whether the Government would pay the claim. *United States ex rel. Patel v. Catholic Health Initiatives*, No. 18-20395, 2019 WL 6208665, at *4 (5th Cir. Nov. 20, 2019) (quoting *United States ex rel. Patel v. Catholic Health Initiatives*, 312 F. Supp. 3d 584, 605 (S.D. Tex. 2018)).

Here, the Court finds that the Third Amended Complaint sufficiently states a false records claim. According to Relators, Defendant artificially inflated its students' course completion metric, failed to report disqualifying class absences, "forced" its teachers to assist the students in GED testing, required the teachers to complete courses for the students, and recategorized

---

[4] The Court recognizes that Relators' allegations regarding the October 1, 2010 meeting are still deficient for the reasons set forth in this Court's prior order. *See Career Opportunities*, Civ. A. No. 3:16-CV-3248-S, 2019 WL 460229, at *4 (N.D. Tex. Feb. 6, 2019). This deficiency is no longer dispositive, however, because the alleged fraud is stated with particularity under Rule 9(b). Additionally, even under the *Grubbs* analysis, the pervasiveness of the alleged fraud in the CIS reports and the metrics that were used to calculate the base and incentive fees, when taken into consideration with Relators' ability to observe the fraud, is sufficient to create reliable indicia that false claims were actually submitted. *See Grubbs*, 565 F.3d at 190.

dismissals for disciplinary reasons as "medical separations," to "receive[] additional monies and bonuses from the DOL." Third Am. Compl. ¶¶ 57, 59, 63, 65, 66-68, 69-70. These alleged falsities were material to claims for payment, as they provided the foundation for the base and incentive fees that Defendant claims from the government under its contract, and therefore, bore directly on the government's decision to pay the claim. Third Am. Compl ¶¶ 26, 28, 60, 91-92; *see also United States ex rel. Lemon v. Nurses to Go, Inc.*, 924 F.3d 155, 159-60 (5th Cir. 2019) ("A violation is material if a reasonable person 'would attach importance to [it] in determining his choice of action in the transaction.'") (alteration in original) (quoting *Escobar*, 136 S. Ct. at 2002-03). The Court, therefore, denies the Motion as to this claim.

### C.   *Implied False Certification Claim*

It is well-established Supreme Court and Fifth Circuit law that "defendants could be liable under the FCA for violating statutory or regulatory requirements, whether or not those requirements were designated in the statute or regulation as conditions of payment." *Lemon*, 924 F.3d at 159-60; *see also Universal Health Servs., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 1999-2001 (2016). To be found "liable under th[is] implied false certification theory," however, a defendant's *claim for payment* must make "specific representations about the goods or services provided" and "fail[] to disclose noncompliance with material, statutory, regulatory, or contractual requirements [that] make[] those representations misleading half-truths." *United States ex rel. Smith v. Wallace*, 723 F. App'x 254, 255 (5th Cir. 2018) (quoting *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 2001 (2016)).

Here, Relators allege that Relator Williams inputted data that was false and known to be false into the CIS. Third Am. Compl. ¶ 40. Moreover, the allegedly false data inputted into the CIS was used to complete Form 2110's, which were submitted to the DOL for the purposes of

obtaining reimbursement. *Id.* ¶¶ 23-26; Resp. 6. While Relators allege that the Form 2110's contained "a certification that the information contained therein is true and correct," Third Am. Compl. ¶ 24, the Form 2110 itself—which has been incorporated by reference into Relators' Complaint—appears to contradict that allegation. *See* Reply in Support of Mot. to Dismiss ("Reply") Ex. A. After a close examination of Form 2110, the Court does not see any certification that the information contained therein is true and correct. *See id.* If allegations in a complaint are contradicted by documents incorporated into the complaint, the Court need not consider those allegations as true for the purposes of a motion to dismiss. *See Associated Builders, Inc. v. Ala. Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974).

Moreover, even though Relators allege that the CIS reports include a certification that the information contained therein is true and correct, when viewing the Third Amended Complaint in the light most favorable to Relators, their contentions still fall short. Third Am. Compl. ¶¶ 25-26. The Third Amended Complaint does not adequately allege that Defendant actually submitted the CIS reports to the DOL as a part of a claim for payment; rather, Relators contend that the CIS reports were used to generate the fees to input into the Form 2110. *See id.* Thus, Relators have failed to show that any of Defendant's claims for payment made "specific representations about the goods or services provided" and "fail[ed] to disclose noncompliance with material, statutory, regulatory, or contractual requirements [that] make[] those representations misleading half-truths." *United States ex rel. Smith v. Wallace*, 723 F. App'x 254, 255 (5th Cir. 2018) (quoting *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 2001 (2016)). The Court, therefore, grants the Motion as to this claim.

### D. *Conspiracy Claim*

Finally, the Court finds that Relators' conspiracy claim is insufficiently pleaded. Under the FCA, conspiracy liability attaches where a person "conspires to commit a violation of" the presentment and/or false record provisions. 31 U.S.C. § 3729(a)(1)(C). To allege a conspiracy, a relator must show the existence of an unlawful agreement to get a false or fraudulent claim paid or allowed and at least one act performed in furtherance of the agreement. *Grubbs*, 565 F.3d at 193. The purported conspirators must share a specific intent to defraud the Government. *United States ex rel. Farmer v. City of Houston*, 523 F.3d 333, 343 (5th Cir. 2008). "The particularity requirements of Rule 9(b) apply to the [FCA's] conspiracy provision with equal force as to its 'presentment' and 'record' provisions." *Grubbs*, 565 F.3d at 193.

Relators have failed to plead an FCA conspiracy with any degree of particularity. Relators argue that Defendant "entered into a conspiracy with DJI and others to defraud the United States" and that Defendant "conspired with DJI, Fluor and others to omit disclosing or to actively conceal facts, which if known, would have reduced or eliminated government obligations and benefits to them." Third Am. Compl. ¶ 110. However, the Second Amended Complaint is devoid of allegations that Defendant, DJI, Fluor, "and others" reached any sort of agreement. First, there are no allegations as to Fluor's involvement, except that Fluor acquired DJI. *See id.* ¶ 16. Second, the reference to "others" does not satisfy the Rule 9(b) requirement to plead the existence of a conspiracy with materiality. *See Grubbs*, 565 F.3d at 193.

Third, as to the alleged conspiracy with DJI, the allegations are either inconsistent or insufficient. There are allegations of a potential conspiracy between Lana Kite, of COI, and Maria Martin, of DJI. *See* Third Am. Compl. ¶¶ 36, 40 (noting that both were at the October 1, 2010 meeting and that Relator Williams was directed by both to input false statements). However,

Relators also claim that "Martin was the alter ego of Kite and NTJCC." *Id.* ¶ 32. Aside from the conclusory allegations that DJI and COI worked together, *see id.* ¶¶ 16-18, 50, 80, there are no allegations in the record that suggest that DJI entered into an agreement to defraud the Government. Additionally, the alleged October 1, 2010 meeting is insufficient to show that COI entered into an agreement to defraud the government. *See id.* ¶¶ 36, 38. Indeed, there are no allegations that any individuals at that meeting agreed to Kite's alleged scheme or "shared a specific intent to defraud the [G]overnment." *See id*; see also *Farmer*, 523 F.3d at 343 (quoting *United States ex rel. Reagan v. E. Tex. Med. Ctr. Reg'l Healthcare Sys.*, 274 F. Supp. 2d 824, 857 (S.D. Tex. 2003)). Moreover, there is an apparent two-year temporal gap between the October 1, 2010 meeting and any alleged fraudulent acts. The Court therefore grants the Motion as to this Count.

## V.    CONCLUSION

For the foregoing reasons, the Court denies the Motion to Dismiss as to Count I and the false records claim in Count II. The Court grants the Motion to Dismiss as to Count III and the implied certification claim in Count II.

**SO ORDERED.**

SIGNED January 31, 2020.

**KAREN GREN SCHOLER**
**UNITED STATES DISTRICT JUDGE**